## TERMINAL GAS & SUPPLY CO. v. FEDERAL RESERVE BANK OF BOSTON.
### No. 6042.

District Court, D. Massachusetts.
March 23, 1937.

William W. Risk, of Boston, Mass., for plaintiff.

Phillips Ketchum, of Herrick, Smith, Donald & Farley, of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is an action at law in which the plaintiff seeks to recover from the defendant for alleged negligence in presenting checks owned by the plaintiff for payment to the drawee bank, and for accepting, in lieu of cash in payment of the checks, a draft drawn by that bank which subsequently closed before collection of the draft could be made.

The facts are as follows: The plaintiff is a corporation organized under the laws of Massachusetts, and has its principal place of business in the Charlestown district of Boston. The defendant is a banking corporation organized under an act of Congress (the Federal Reserve Act [see 12 U.S.C.A. § 221 et seq.]), and has its principal place of business in Boston.

On October 3, 1931, the plaintiff received three checks in the usual course of business drawn on the Medford Trust Company of Medford, Mass., and delivered them with a blank indorsement on each check to the Charlestown Trust Company which is not a member of the Federal Reserve System. The deposit slip accompanying the checks read as follows:

"In receiving items for deposit or collection, this Bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This Bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this Bank not good at close of business on day deposited."

The Charlestown Trust Company credited the checks to the plaintiff's account, and on the same day forwarded them, with other checks, to the Atlantic National Bank of Boston, a member of the Federal Reserve System, for collection and credit to its account. The Atlantic National Bank then indorsed the checks in blank, and sent them, with others, to the defendant for collection and credit to its account. On the same day that it received them, the defendant mailed the plaintiff's checks, together with others drawn on the Medford Trust Company, to the Medford Trust Company for collection. The Medford Trust Company was not a member of the Federal Reserve System, and had no account with the defendant. On October 6, 1931, the Medford Trust Company received the checks, and charged them to the account of the maker, and marked the said checks paid. On the same day it mailed to the defendant two drafts covering the amount of these checks, and others. These drafts were drawn on the National Shawmut Bank and the Atlantic National Bank, both of Boston. On October 7, 1931, the defendant received the drafts. Before presenting them to the clearinghouse, however, the defendant requested the respective drawee banks to certify them. Both of the banks refused certification, and advised that the drafts would probably be paid in the regular course through the clearinghouse at its regular meeting that morning. The drafts were then presented for payment through the Boston clearinghouse at its regular meeting at 10 a. m. At 10:50

a. m., the Medford Trust Company suspended business. The Commissioner of Banks of Massachusetts took possession of its assets, and during the forenoon of that day ordered the banks upon which the Medford Trust drafts were drawn not to pay out any funds of the Medford Trust Company. Before 2 o'clock the drawee bank returned the drafts unpaid to the defendant assigning as a reason for the return that the Medford Trust Company had closed.

At the time that the drafts were returned to the defendant bank there were sufficient funds on deposit with the drawee banks to have paid the drafts, and undoubtedly they would have been paid had it not been for the order of the Commissioner of Banks of Massachusetts. Thereafter, the defendant charged back the amount of the plaintiff's checks to the Atlantic National Bank which charged them back to the Charlestown Trust Company which charged them back to the plaintiff.

Prior to the promulgation of the present Regulation J by the Federal Reserve Board, it was well settled that a collecting agent had no authority to accept other than legal tender in collecting a check for a principal. Ward v. Smith, 7 Wall. 447, 452, 19 L.Ed. 207. That rule was applied to banks receiving commercial paper for collection in Federal Reserve Bank v. Malloy et al., 264 U.S. 160, at page 165, 44 S.Ct. 296, 298, 68 L.Ed. 617, 31 A.L.R. 1261, and cases cited therein. In the Malloy Case it was sought to have this well-settled rule varied by virtue of a state statute (Laws of Florida 1909, c. 5951, p. 146) which provided that it should be considered "due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument so deposited, to forward en route the same without delay in the usual commercial way in use according to the regular course of business of banks," and that the banks should be liable only if actual final payment was received by it, except in the case of want of due diligence on its part as aforesaid. In construing this statute, the Supreme Court of the United States refused to alter the rule forbidding a collecting agent accepting anything but money for payment. Shortly thereafter the present

Regulation J was promulgated by the Federal Reserve Board, and section V, subsection (3) is as follows:

"A Federal reserve bank may, in its discretion and at its option, either directly or through or from an agent, accept in payment of or in remittance for such checks, cash, bank drafts, transfers of funds or bank credits, or other forms of payment or remittance, acceptable to the collecting Federal reserve bank. The Federal reserve bank shall not be liable for the failure of the drawee bank or any agent to pay or remit for such checks, nor for any loss resulting from the acceptance from the drawee bank or any collecting agent, in lieu of cash, of any other form of payment or remittance, authorized herein, nor for the nonpayment of, or failure to realize upon, any bank draft or other medium of payment or remittance which may be accepted from the drawee bank or any collecting agent."

Prior to October, 1931, the defendant, with the actual knowledge and consent of the Federal Reserve Board, made and promulgated, and there was in effect at the time of this transaction its circular letter E, dated September 2, 1930, which contained in section 2, subsection (3) a similar regulation.

The action of the defendant herein was clearly within the authority of Regulation J, section V, subsection (3), and section 2, subsection (3) of the defendant's circular letter E. The credit that the defendant received from the Medford Trust Company was not a provisional credit which, through no fault of its own, did not prove to be a collectible credit. There was, therefore, no relationship of debtor and creditor existing between the parties hereto. The enactment of the section under consideration appears to be a valid exercise of the powers reposed in the Federal Reserve Board by Congress, and acting within its authority the defendant is not liable to the plaintiff.

The defendant's requests for rulings are denied in so far as they are inconsistent with this opinion, and are allowed in so far as they are consistent with it.

Judgment may, therefore, be entered for the defendant.